IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 19-162 |
| | ) | |
| | ) | |
| RICHARD COTO-WHEAT, | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM ORDER</u>

Before the Court is Defendant's First Motion for Release from Custody.   ECF 898.

Upon receipt of this Motion, this Court ordered that counsel for the Government, counsel for the

Defendant, and the Probation Office to confer regarding Defendant's Motion for Release from

Custody.   ECF 902.   The parties were next ordered to provide a status report on or before April

13, 2020 regarding any potential resolution.   Id.   The probation office filed a report with its

position (ECF 913), and the Government filed the status report on behalf of the parties.   ECF

917.   The status report indicated that no resolution could be reached, and thus, the Government

responded to Defendant's Motion.   ECF 930.   After careful consideration, and for the reasons

that follow, Defendant's Motion will be DENIED.

### I. Procedural History

Pretrial Services, in its full bond report dated June 13, 2019, recommended that

Defendant be detained.   ECF 913.   Defendant was ordered to be detained on June 13, 2019, by

Chief United States Magistrate, Cynthia Eddy.   ECF 150.

On November 26, 2019, Defendant pled guilty to Count One of the indictment charging him with conspiracy to distribute and intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin.   ECF 609.

Defendant changed his plea pursuant to a plea agreement.   The plea agreement contained a stipulated sentence including a term of seventy months of imprisonment.   This Court accepted the plea agreement at the change of plea hearing, and notified Defendant during the hearing that he would be sentenced in accordance with his plea agreement.

Before the change of plea hearing, Defendant was incarcerated and at the end of the change of plea hearing, the Court asked the Government and Defendant if he was to remain incarcerated.   The Government indicated that Defendant should remain incarcerated, and Defendant lodged no objection.   Defendant is currently being housed in the Indiana County Jail ("ICJ") pending his sentencing hearing.   ECF 898.

**II. Discussion**

Defendant's counsel has filed the instant Motion (ECF 898) on Defendant's behalf indicating that Defendant has asthma and that he had pneumonia when he was 19 years old (presently, he is 26 years old).   Id.   He argues that these medical conditions place him in a risk group according to the Centers for Disease Control ("CDC") in terms of susceptibility to the COVID-19 virus.   Id.   Defendant further contends that the ICJ is not protecting him from the virus because he is presently being housed in the intake pod of the ICJ where new prisoners are brought in from the community and thereby potentially exposing him to the virus.   Id.   He argues that this his placement in the intake pod creates an unreasonable risk to him and others and goes directly against the social distancing policy in place throughout the United States.

Given the procedural posture of this case, the applicable statute governing whether Defendant should be released is 18 U.S.C. § 3143, which reads, in pertinent part, as follows:

> (a) Release or detention pending sentence.—
> (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).
> (2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless—
>> (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

Simply stated, pursuant to Section 3143(a), once a Defendant pleads guilty, detention is presumed: (1) unless a new trial or judgment of acquittal is likely; (2) the Government plans to request that Defendant serve no jail time; or (3) the Court finds by clear and convincing evidence that Defendant poses no danger to community or is not likely to flee.   Neither (1) nor (2) above are applicable and given the nature of the offense in this case and the agreed-upon sentence of 70 months imprisonment for drug conspiracy, this Court cannot find by clear and convincing evidence that Defendant poses no danger to the community.

Furthermore, as noted by the Government in its Response, both counsel for the Government and counsel for Defendant received a written statement from the United States Probation Office, which indicated that it stood by its original detention assessment as follows:

> Pretrial Services prepared a full bond report on Mr. Coto-Wheat on June 13, 2019, recommending detention. The defendant was ordered to be detained the same day by Chief U.S. Magistrate Judge Cynthia Reed Eddy, and has remained detained since that time. It is noted that the defendant entered a guilty plea to the indictment on November 26, 2019, and is currently pending sentencing.
>
> Pretrial Services has not received any information that would substantially change information contained in the Pretrial Services report originally prepared. Consequently, Pretrial Services maintains our recommendation of detention. It is noted that Pretrial Services officers are not uniquely qualified to make clinical assessments, evaluate an "at risk" population based on health concerns, or make recommendations to the Court on health assessments..

ECF 913.

Next, the Court recognizes a general risk of exposure to the COVID-19 virus at the ICJ. Unfortunately, that risk currently exists everywhere in the community – Indiana County and Allegheny County included.   The ICJ, along with this Court and a myriad of other local authorities, have taken the necessary steps and precautions to help stop the spread of the COVID-19 virus amongst the population, including those individuals detained in the ICJ.

Furthermore, as noted by the Government in its Response:

> [O]fficials at ICJ have employed numerous measures to ensure the safety and well-being of the inmates/detainees, as well as for the limited number of visitors (attorneys), staff and others working at the facility, including:
>
> • Limiting the number of inmate visitations, largely precluding the public from entering the facility; however, attorneys may be approved to visit ICJ so long as they pass screening measures.

4

• Screening anyone (new commitments, staff, medical personnel, food service personnel) who enters the facility, which includes having his/her temperature taken. For those who do not meet the screening requirements, they are turned away (VTC is still accessible) and can come back fourteen (14) days later to be re-screened and, if they pass the screening, permitted to enter the facility.

• Screening new commitments before actually entering facility and, if a new commitment tests positive for COVID-19, ICJ has designated locations within the facility to quarantine those new commitments.

• Implementing additional cleaning measures, using approved chemicals.

• Providing inmates with additional supplies to keep their cells clean, including soap, gloves, and other equipment and supplies for cleaning.

• Educating inmates of the cleaning protocols that health authorities are recommending.

• Administering breathing treatments in a negative air pressure cell.

Participating in calls and adhering to the policies and guidelines established and/or recommended by the State Department of Corrections and Indiana County, as well as all guidelines issued by the CDC and HHS.

ECF 930, p. 6.

The Government also reported that as of June 12, 2020, there have been no reported cases of COVID-19 inside the ICJ.   Id. at p. 7.   The Government further reported that:

All staff are required to wear masks when in the building and are screened, including having their temperatures taken, before the start of each shift. Additionally, as of April 15, 2020, staff members will also be subjected to random rolling temperature checks during each shift in addition to the initial temperature checks prior to starting a shift. The ICJ has stopped all housing unit moves, unless it is absolutely necessary, and has moved its initial intake quarantine to the booking department and extended it to seven (7) days. Furthermore, temperatures are being taken on all inmates at least three (3) times per week, and the ICJ, as of April 15, 2020, inmates are also subjected to random rolling temperature checks in addition to the current inmate temperature check policy.

Id.

In addition to what the ICJ administration and staff are doing to reduce the risk of an outbreak inside the jail, Chief Judge Hornak's Administrative Orders have postponed all federal criminal trials scheduled to commence through April 27, 2020.   Misc. No. 2:20-mc-394-MRH. In fact, this Court also issued Orders continuing its own criminal proceedings, including jury trials and sentencings in most of its criminal cases.   This Court has done so, in part, to ensure the health and safety of Defendant (and all other defendants) in this case, by reducing Defendant's exposure to additional individuals in the community.   This also diminishes the likelihood that this Defendant (and other defendants), while traveling to and from the jails for proceedings in the Federal Courthouse, becomes exposed to the virus, and then returns to the jails only to inadvertently spread the virus within the ICJ.   To this end, this Court postponed Defendant's sentencing hearing at the request of Defendant's counsel and with the Government's consent.

Moreover, the Indiana County Court of Common Pleas, which houses substantially more prisoners at ICJ than the Federal Court, was closed by the Pennsylvania Supreme Court through April 30, 2020.   See Order of Court, Court of Common Pleas Indiana County, No. AD-4-2020.   Again, one of the reasons behind delaying these criminal matters is to protect inmates in the ICJ, including Defendant, so that their risk to exposure is not increased by any additional interaction with the Court staff, the safety officers within the courthouse, and any members of the public.

Finally, the Court notes that as of this writing, Indiana County has 44 confirmed cases of COVID-19 virus and two deaths related to same, while Allegheny County (the county where Defendant would live if he were to be released) has had 925 confirmed cases and 38 deaths. See https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last visited April 17, 2020).

Accordingly, the Court concludes that the order detaining Defendant remains appropriate. The temporary release of Defendant is not warranted.

AND NOW, this 17th day of April, 2020, the Court hereby ORDERS that Defendant's First Motion for Release from Custody (ECF 898) is DENIED.

SO ORDERED this 17th st day of April, 2020.

s/Arthur J. Schwab _____
Arthur J. Schwab
United States District Judge

cc:      All counsel of record

7